# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ANGELA CHUMBLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-cv-00283-SGC |
| ) | |
| COMMISSIONER, SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Angela Chumbler, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Chumbler timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.   Procedural History

Chumbler alleged in her application for DIB that she became disabled on June

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: Doc. __ at __. Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear as: Tr. at __.

18, 2020. (Tr. at 21). After her claim was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*). An ALJ conducted a hearing and then denied Chumbler's claim on October 5, 2022. (*Id.* at 21-33). Chumbler requested review of the ALJ's decision by the Appeals Council and submitted additional evidence for consideration. The Appeals Council declined to exhibit the evidence and denied review of the ALJ's decision. (*Id.* at 11-14). The decision then became the final decision of the Commissioner. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Chumbler thereafter commenced this action. (Doc. 1).

## II.     Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). An applicant for DIB must demonstrate disability between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The

Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Chumbler would meet the SSA's insured status requirements through December 31, 2025, and had not engaged in substantial gainful activity since June 18, 2020, the alleged onset date of her disability. (Tr. at 23-24).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Chumbler had the following severe impairments: (1) adjustment disorder with depression and anxiety and (2) mild-to-moderate bilateral hip arthropathy. (Tr. at 24). The ALJ concluded that, while Chumbler alleged she suffered from irritable

bowel syndrome ("IBS") and fibromyalgia, these were not medically determinable impairments. (*Id.* at 27-28).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Chumbler did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (Tr. at 28).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Chumbler had the

RFC to perform a limited range of light work. (Tr. at 29). At the fourth step, the ALJ determined Chumbler could perform her past relevant work as a quality control checker and a data entry clerk. (*Id.* at 32). The ALJ therefore concluded Chumbler was not disabled between June 18, 2020, the alleged onset date of her disability, and October 5, 2022, the date of the ALJ's decision. (*Id.* at 32-33).[3]

## III.   Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such

---

[3] Because the ALJ concluded at the fourth step that Chumbler could perform her past relevant work and, therefore, is not disabled, the ALJ did not proceed to the fifth step, which would have required the ALJ to consider whether there was other work Chumbler could perform in light of her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1).

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

The court generously construes Chumbler's brief as asserting the ALJ erred (1) in her analysis of Chumbler's alleged IBS and fibromyalgia, (2) by discrediting her statements regarding disabling pain she experiences, and (3) by failing to obtain an additional consultative examination. (Doc. 14 at 15-20). Chumbler additionally asserts the Appeals Council erred in declining to exhibit additional evidence she submitted for consideration. (Doc. 14 at 20-23).

### A. First Claim or Error

At step two of the sequential analysis, the ALJ determines whether a claimant

6

has a "medically determinable" impairment and then whether the medically determinable impairment – assuming the claimant has one – is severe. 20 C.F.R. § 404.1521. The record must contain "objective medical evidence" of an anatomical, physiological, or psychological abnormality for the ALJ to conclude a claimant has a medically determinable impairment. *Id.* A claimant's statement of symptoms does not establish the existence of a medically determinable impairment and neither does a diagnosis or a medical opinion. *Id.* Objective medical evidence means medical signs, laboratory findings, or both. *Id.* at § 404.1513(a)(1). The medical signs and laboratory findings must be the product of "medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 404.1521.[4]

The ALJ concluded Chumbler's alleged IBS did not constitute a medically determinable impairment because (1) there was no IBS diagnosis in the record; (2) while Chumbler was treated for diarrhea, she did not complain of that symptom persistently and denied gastrointestinal problems during her most recent medical appointments; and (3) the record did not reflect significant fluctuations in Chumbler's weight. (Tr. at 27). This conclusion was not in error.

Chumbler testified during the hearing that she suffers from uncontrollable

---

[4] Chumbler seems to argue she could establish her alleged IBS as a medically determinable impairment through her testimony regarding symptoms she experiences. (Doc. 14 at 16-19). However, an ALJ cannot conclude a claimant's symptoms affect her ability to do basic work activities unless the ALJ first associates the symptoms with a medically determinable impairment. 20 C.F.R. § 404.1529(b); SSR 16-3p.

diarrhea. (*Id.* at 64-67, 81-89). She also reported a history of chronic diarrhea to her rheumatologist in June 2019 and told her primary care provider in December 2020 that she had experienced rectal bleeding. (*Id.* at 347, 436). However, these statements standing alone do not establish IBS (or any other malady) as a medically determinable impairment from which Chumbler suffered during the relevant period, *see* 20 C.F.R. § 404.1521, and the record lacks medical signs or laboratory findings, derived from clinical or laboratory diagnostic techniques, of IBS. There is no IBS diagnosis in the record – although that would not be sufficient to establish a medically determinable impairment of IBS, either – and Chumbler testified she does not take any medication for her alleged symptoms. (Tr. at 64-65). The results of two colonoscopies Chumbler had in relation to her reported history of chronic diarrhea and rectal bleeding apparently were normal. (*Id.* at 54, 347). Chumbler did not complain of any gastrointestinal problems during medical appointments in March, June, September, and October 2021 – although, again, any such complaints would fall short of satisfying the evidentiary standard – and physical examinations of her abdomen during those appointments were normal. (*Id.* at 468-69, 471, 474-75, 477-78, 480-81). The same is true of doctors' appointments in February and June 2021. (*Id.* at 488-93, 495-97).

    The ALJ likewise concluded Chumbler's alleged fibromyalgia was not a medically determinable impairment. (*Id.* at 27). This conclusion was not in error,

either. Fibromyalgia is a common but complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months. SSR 12-2p. Social Security Ruling 12-2p addresses the evidence required to establish fibromyalgia as a medically determinable impairment. *See id.* The record must include a diagnosis of fibromyalgia, and the diagnosis must not be inconsistent with other evidence of record. *Id.* Additionally, the diagnosing physician must provide either evidence described in the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or evidence described in the 2010 ACR Preliminary Diagnostic Criteria to support the diagnosis. *Id.* The 1990 ACR Criteria requires (1) a history of widespread pain, (2) at least 11 positive tender points on physical examination, and (3) evidence that other disorders which could cause the signs or symptoms were excluded. *Id.* The 2010 ACR Preliminary Diagnostic Criteria requires (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia signs, symptoms, or co-occurring conditions – especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders which could cause the signs or symptoms were excluded. *Id.*

The record here includes an ostensible diagnosis of fibromyalgia. (*See* Tr. at 488). However, the diagnosis is not accompanied by evidence of a history of

9

widespread pain, at least 11 positive tender points on physical examination, or repeated manifestations of six or more fibromyalgia signs, symptoms, or co-occurring conditions that would support the diagnosis, and that evidence does not appear elsewhere in the record.

Because the ALJ properly concluded there was not sufficient evidence to establish IBS or fibromyalgia as a medically determinable impairment from which Chumbler suffered, the ALJ was not required to determine whether Chumbler's alleged IBS or fibromyalgia was severe or consider either when assessing Chumbler's RFC. *See* 20 C.F.R. § 404.1521 ("After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe."); *Simpson v. Colvin*, 2015 WL 139329, at *5 (N.D. Ala. Jan. 12, 2015) (holding ALJ was not required to consider claimant's alleged fibromyalgia past step two of the sequential analysis because ALJ properly concluded it was not a medically determinable impairment); *McConnell v. Kijakazi*, 2022 WL 672151, at *7 (M.D. Ala. Mar. 7, 2022) (same).

### B. Second Claim of Error

A claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, he must satisfy the three-part "pain standard" by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that

confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *Whitmore v. Comm'r of Soc. Sec.*, 855 F. App'x 641, 643 (11th Cir. 2021); *see also* 20 C.F.R. § 404.1529 (containing substantially similar language); SSR 16-3p (same).

An ALJ may discredit a claimant's testimony regarding his subjective symptoms provided he or she clearly articulates explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Whitmore*, 855 F. App'x at 643. In evaluating a claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms, an ALJ considers all available evidence. 20 C.F.R. § 404.1529(c); SSR 16-3p; *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021).

Chumbler testified she experiences disabling pain throughout her body. (Tr. at 68-70). The ALJ determined Chumbler's statements concerning the intensity, persistence, and limiting effects of her pain were not entirely consistent with the medical and other evidence of record. (*Id.* at 30-31). The ALJ articulated multiple reasons for discrediting Chumbler's testimony, including that the testimony was not consistent with (1) her reports to treatment providers regarding the severity of her symptoms, (2) the findings of a consultative physical examination, (3) the results of

11

an imaging study, or (4) her reported daily activities. (*Id.* at 31).

Together, these were appropriate grounds for discrediting Chumbler's subjective symptoms testimony. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p; *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (holding ALJ properly discredited plaintiff's subjective symptoms testimony where that testimony was not supported by clinical findings or consistent with objective medical evidence or reported daily activities). Moreover, the evidence discussed below, which the ALJ cited in support of her determination to discredit the testimony, is substantial.

Chumbler denied experiencing any musculoskeletal pain when she saw her primary care provider in March and September 2020. (Tr. at 469, 472, 478). Chumbler presented for a consultative physical examination in November 2020. Her gait was slow and cautious, and she had a decreased range of motion in her shoulders; but the results of the examination were largely normal otherwise. (*See id.* at 419-25).

Chumbler reported moderate left shoulder pain when she saw her primary care provider in December 2020, and a physical examination showed the range of motion in her left shoulder was moderately restricted. (*Id.* at 484, 486). However, imaging of the shoulder revealed no abnormality. (*Id.* at 507). While Chumbler endorsed continued left shoulder pain in February 2021, she reported she did not hurt "near as bad" when she was taking Cymbalta, which it appears her primary care provider had

prescribed in October 2020 for anxiety and depression. (*Id.* at 480, 482, 488). Chumbler's primary care provider continued her Cymbalta and prescribed physical therapy. (*Id.* at 490).[5,6]

When Chumbler saw her primary care provider in June 2021, she did not endorse continued shoulder pain but did complain of bilateral hip pain. (*Id.* at 491). Imaging of her hips showed only mild-to-moderate bilateral hip arthropathy. (*Id.* at 510). Her primary care provider gave her a Toradol injection, continued her Cymbalta, and put in an order for prescription-strength ibuprofen. (*Id.* at 493).[7] When Chumbler returned a year later, she reported the medications she was taking for pain were effective. (*Id.* at 495). That record does not include any complaints of pain at all. (*See id.* at 495-98).

Chumbler reported during a consultative psychiatric examination in April 2021 that her daily activities included cooking and cleaning. (*Id.* at 451). She testified during the hearing before the ALJ that she helps care for her mother by driving her to medical appointments and reminding her to take medication. (*Id.* at 76).

---

[5] Cymbalta is used to treat anxiety, depression, and pain. *See* https://www.mayoclinic.org/drugs-supplements/duloxetine-oral-route/description/drg-20067247 (last accessed March 6, 2024).

[6] Chumbler missed 5 of the 11 prescribed physical therapy sessions. (*Id.* at 518).

[7] Toradol is a nonsteroidal anti-inflammatory drug used to treat pain. *See* https://www.mayoclinic.org/drugs-supplements/ketorolac-oral-route-injection-route/description/drg-20066882 (last accessed March 6, 2024).

The court additionally notes the conversative nature of the treatment Chumbler received for pain – treatment she reported was effective – is not consistent with Chumbler's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv) and (v); SSR 16-3p; *Draughton v. Comm'r, Soc. Sec.*, 706 F. App'x 517, 520 (11th Cir. 2017) (holding conservative nature of claimant's treatment supported ALJ's decision to discredit claimant's testimony regarding his pain); *Doig v. Colvin*, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery. Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e., not surgery.").

### C. Third Claim of Error

An ALJ has "a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The obligation requires an ALJ to order a consultative examination if a consultative examination is necessary for the ALJ to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). But if the record contains sufficient evidence for the ALJ to make an informed decision, the ALJ is not required to order a consultative examination. *Ingram*, 496 F.3d at 1269. In that case, the decision to order a consultative examination is a matter of discretion for the ALJ. *Banks for Hunter v. Comm'r of Soc. Sec.*, 686 F. App'x 706, 713 (11th Cir. 2017). Moreover, a claimant must

14

demonstrate an evidentiary gap that results in unfairness or clear prejudice before remand for further development of the record is warranted. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Chumbler does not argue the ALJ erred by failing to order a consultative examination. The ALJ did order a consultative examination. As stated, Chumbler presented for a consultative physical examination in November 2020. (*See* Tr. at 419-25). Chumbler instead asserts the ALJ erred by failing to order an additional consultative examination and, more specifically, an additional consultative examination to assess her alleged IBS. (Doc. 14 at 19-20). The court disagrees. The record contained sufficient evidence, discussed above, for the ALJ to conclude Chumbler's IBS was not a medically determinable impairment. Moreover, Chumbler has not suggested how or why the findings of an additional consultative examination could be expected to differ from the record as it stands. For example, there is no indication of a worsening of her alleged IBS. *See* 20 C.F.R. § 404.1519a(b)(4) (identifying change in claimant's condition as an example of circumstance when consultative examination may be warranted). Therefore, she has failed to establish prejudice.

### D. Fourth Claim of Error

A claimant generally may present additional evidence at each stage of the administrative process. 20 C.F.R. §§ 404.900(b), 404.970. The Appeals Council

must consider "new, material, and chronologically relevant evidence" submitted by a claimant. *Id.* at § 404.970. Evidence is new if it is not merely cumulative of the evidence that was before the ALJ. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Evidence is material if there is a reasonable probability it would change the administrative result. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if it relates back to the time of the ALJ's decision. *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322 (11th Cir. 2015). Whether evidence is new, material, and chronologically relevant is a question of law subject to *de novo* review. *Id.* at 1321.

Chumbler submitted two additional pieces of evidence to the Appeals Council: (1) a medical record documenting her appointment at Atrium Health on September 12, 2022, and (2) a medical record documenting her appointment at Atrium Health on November 1, 2022. (Tr. at 39-56). The Appeals Council determined there was not a reasonable probability the September 12, 2022 record would change the ALJ's decision and that the November 1, 2022 record did not relate to the period at issue. (*Id.* at 12). The Appeals Council therefore declined to exhibit the records. (*Id.*).

The September 12, 2022 record documented that Chumbler presented with complaints of anxiety and back pain. (*Id.* at 47). Her back pain appears to have been treated as attributable to a urinary tract infection, although a urinalysis appeared

16

normal. (*Id.* at 47, 52-54). In relation to her anxiety, Chumbler reported she had stopped taking her Cymbalta and then restarted the medication the week prior after experiencing an anxiety attack. (*Id.* at 48).[8] The nurse practitioner added Abilify to Chumbler's medication regimen. (*Id.* at 49).[9] When Chumbler presented to Atrium Health for a follow-up appointment on November 1, 2022, she reported she was "doing much better" but still having difficulty getting out of the house and "struggling with agoraphobia." (*Id.* at 42).

The Appeals Council did not err in declining to exhibit the records. The court is not convinced the November 1, 2022 record constitutes evidence of a new diagnosis of agoraphobia, as Chumbler contends. (*See* Doc. 14 at 22). The reference to agoraphobia appears in the section of the record discussing Chumbler's reported complaints and not in the diagnostic section of the record. (*See id.* at 42-43). Regardless, a diagnosis standing alone does not establish disability. *See Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). Moreover, the pain, anxiety, and difficulty getting out of the house Chumbler reported during the September 12 and November 1, 2022

---

[8] The court observes Chumbler also reported during this appointment that Cymbalta "really helps with her muscular pain." (*Id.* at 48).

[9] Abilify is used to treat depression. *See* https://www.mayoclinic.org/drugs-supplements/aripiprazole-oral-route/side-effects/drg-20066890?p=1 (last accessed March 6, 2024).

17

appointments were symptoms she had reported before. (*See, e.g.*, Tr. at 71, 302, 480). The ALJ considered the symptoms and either accounted for them in her assessment of Chumbler's RFC or properly rejected them. (*Id.* 24-26, 29, 31-32).[10] For these reasons, the information contained in the September 12 and November 1, 2022 records was largely cumulative of information already contained in the record and was not reasonably probable to have changed the administrative result. Additionally, the court notes Chumbler reported during the latter appointment that she was "doing much better." (*Id.* at 42).

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 6th day of March, 2024.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[10] The court has rejected Chumbler's argument the ALJ improperly discredited her statements regarding disabling pain she experiences. Chumbler does not allege error in the ALJ's analysis of her mental health symptoms.